**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **No. 25-MJ-03 (MAU)** |
| **ADRIAN HINTON** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## <u>DEFENDANT'S OPPOSITION TO GOVERNMENT'S<br>MOTION FOR DETENTION</u>

Defendant Adrian Hinton respectfully opposes the government's Motion for Detention. First, the complaint in supported by probable cause because, even under the best factual version of the government's theory, Mr. Hinton did not carry or discharge a firearm, dangerous weapon, explosive or incendiary device, under 40 U.S.C. § 5104(e)(1)(A). Second, the offense for which Mr. Hinton is charged is not detention eligible under 18 U.S.C. §3142(f)(1)(E) because the crime charged is not a crime of violence and does not involve the possession or use of a firearm or destructive device. Third, the government cannot overcome the presumption of release where there is not clear and convincing evidence that there are no conditions or combination of conditions that can reasonably assure the safety of the community. For those reasons, Mr. Hinton should be released.

**Argument**

1

I.    **The charges brought forth by the government are not eligible for detention because it cannot prove that that Mr. Hinton used a "destructive device."**

The government's detention request is premised upon the unfounded conclusion that a "vehicle containing gasoline in it" with a "substance presumed to be Crisco and gasoline, and then igniting it with a match" constituted a destructive device.  ECF No. 1-1 at 4.  The Court has asked the parties to brief whether a car, under the circumstances set forth by the Complaint, is a destructive device. Counsel has found only cases involving cars that contain a separate device capable of explosion but has not found any cases where a car is considered destructive by virtue of the likelihood that it contains gasoline.  A car, without explosives attached to the car is not a device.  The law is clear based upon the statute and the many cases considering the definition of destructive devices.  The car here was not a destructive device because it was "neither designed nor redesigned for use as a weapon." 18 U.S.C. §921 (a)(4)(C).  Moreover, the components necessary to cause an explosion did not exist.  In fact, the gasoline did what it was intended to do – burn but not explode.  Without the materials and components that are designed to cause an explosion, the car could not be a "destructive device" as statutorily defined.

*United States v. Podolsky*, 625 F.Supp 188 (N.D. Ill. 1985) found exactly this when faced with what constitutes a destructive device under much more dangerous circumstances – an arson of a building.  There, the court held that a combination of

gasoline, brake fluid and chlorine was not a destructive device.[1]  The court acknowledged that the mixture was flammable, but distinguished the mixture from a destructive device even though "the device here would ignite and cause a fire but not explode." Mr. Hinton also caused a fire but one that was not designed to, and in fact did not, explode.  "In no way can it be thought of as an "incendiary bomb" or "similar device" under any traditional definition of the words" *Id.* at 198.  *Podolsky* thus concluded "[t]he question here, then, is not whether the device would have been 'destructive' if readily assemble.  Surely it would have caused destruction. Rather, we must decide whether 'destructive' *as defined by the Act*, includes non-explosive devices of the type in this case.'"  *Id.* at 197-98 (emphasis in original).

More recently, a District Court found *Podolsky*'s interpretation to be overly narrow but reemphasized that "something more is required" than plain fire.  *United States v. Graziano*, 616 F.Supp. 2d 350, 359 (E.D.N.Y. 2008) (finding that a plastic can containing gasoline with a cloth rag protruding as a fuse was a destructive device.").  The court "recognize[d] that the simple use of incendiary materials (such as gasoline) by an individual does not automatically transform such materials into an 'incendiary bomb.'"  *Id.*  Citing the dictionary definition of "bomb" as a "Container of explosive or incendiary material, designed to explode on impact or wen detonated by a timer or remote-control," *Graziano* concluded that "an

---

[1] Although *Podolosky* and many of the cited cases involve a possession of firearm charge, 26 U.S.C. §5845(a) contains the same definition for a destructive device as 18 U.S.C. §921.

3

incendiary bomb is simply any container or device that contains an incendiary material that is designed to be dispersed in a violent or rapid manner upon ignition, impact, and/or detonation, including in the form of heat or fire." *Id.* Naturally, the definition could not include lit gasoline a top a car because the car would not have been "designed" to create an explosion.

Other courts have relied upon the "designed [or] redesigned for use as a weapon" clause from the statute to check prosecutorial overreach in defining a destructive device. In *United States v. Reed¸* the Ninth Circuit reversed a conviction where a defendant had "burned a building by igniting several paper-wrapped beverage cans filled with gasoline." The court found that the cans were not and could not be used as a weapon, even though it was "capable of causing great incendiary damage" and was likely to cause "serious harm." 726 F.2d 579, 576 (9th Cir. 1984).

The Fourth Circuit took a different approach in finding that 28 inert grenades that did not contain powder were not destructive devices. *United States v. Blackburn*, 940 F.2d 107, 109 (4th Cir. 1991). The government had argued that the defendant also possessed two other active grenades, which did contain powder and that the powder could be redistributed. In applying a preponderance standard, the court found that the government had not made the requisite showing that there was sufficient powder to arm the remaining 28 grenades. *Id.* Separately, the court found that the 28 grenades were not destructive devices because "a defendant must

possess *every* essential part necessary to construct a destructive device." *Id.* (emphasis in original).

Similarly, here, the government relies upon pure speculation in asking the Court to conclude that a small fire atop a car was somehow capable of causing an explosion because of gasoline potentially inside the car. Putting aside the fact that there was no evidence of how much gasoline there was in the car, there is also no evidence of any gasoline that could have ignited gasoline in the car in the manner that a device would require. There was no gasoline trail between the gas tank and the roof. There was no wick or other connector permitting fire to travel to any other part of the car. In other words, necessary components that could theoretically make the car a device, or a destructive device, simply did not exist. And in contrast to the government's theory, the gasoline was intended to be contained on the roof, as demonstrated by the existence of Crisco. Internet research shows that the popularity of a "Crisco candle," a phenomenon borne by the shortening's ability to contain flames. See e.g. https://www.youtube.com/watch?v=Y1TiVg84ALU.[2]

Even if Mr. Hinton did intend to create some form of Napalm, a car is objectively not a weapon and thus cannot be a dangerous device under this statute. "Congress made no mention of devices made criminal because of the intent of the

---

[2] In contrast, the affidavit claims that Mr. Hinton combined Crisco and gasoline to create Napalm – something he learned on a Youtube video. A search of Youtube videos claim gasoline and Styrofoam can be combined to create a form of napalm but counsel could not find any relevant videos involving Crisco (other than aforementioned Crisco candle videos). Counsel requested Mr. Hinton's statement to the police on January 10, 2025 but has not yet received a copy.

5

possessor or transferee." *United States v. Posnjak*, 457 F.2d 1110 1117 (2d. Cir 1972). Other cases have rejected the government's classification as destructive devices involving materials far more dangerous than a car, as destructive devices. Even dynamite has been found not to be destructive devices because it fell outside of the statutory definition since there was potential commercial use. *United States v. Curtis*, 520 F.2d 1300 (1st Cir. 1975); *Posnjak¸* 457 F.2d at 1117; *United States v. Schofer*, 310 F.Supp. 1292 (E.D.N.Y. 1970). Other courts have found that dynamite could be classified as a destructive device only where there is clear evidence of intent. *Burchfield v. United State¸* 544 F.2d 922, 976 (7th Cir. 1976); *Langel v. United States*, 451 F.2d 957 (8th Cir. 1971) (dynamite was part of a destructive device when it was clear that the intent was to use the device as a bomb); *United States v. Oba*, 448 F.2d 892 (9th Cir. 1971) (same); *United States v. Morningstar*, 456 F.2d 278 (4th Cir. 1972) (same).

In this case, there is no evidence that the car was not used as a destructive device. The presence of flames and gasoline outside of the car do not demonstrate that the gasoline tank of the car bore played any intended part in the alleged conduct. Simply put, the car was not used as a weapon.

## II. The government has not demonstrated, by clear and convincing evidence, that there are no conditions or combination of conditions that can reasonably assure the Court of the safety of the community.

Consistent with the presumption of innocence and the Eighth Amendment prohibition

6

against excessive bail, the Bail Reform Act of 1984 provides that a defendant should be released pending trial on personal recognizance or "subject to the least restrictive further conditions, or combination of conditions that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(b) and (c)(1)(B). The Supreme Court has explained: "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987); see also *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("Detention until trial is relatively difficult to impose."). As a general rule, courts should refuse to release defendants on bail "[o]nly in rare circumstances," and "only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) (Kennedy, J.). Any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Id*. at 1405.

The government bears the burden of demonstrating, by clear and convincing evidence, that preventative detention is necessary to ensure the safety of the community. No rebuttable presumption exists in this case so the burden of production and proof rests with the government. The government must ultimately prove that detention is necessary by the weighty "clear and convincing evidence" standard. Because it cannot prove that Mr. Hinton dangerous, with any combination of conditions, he should be released.

Under the Bail Reform Act, the Court must consider the following factors when determining whether the government has set forth clear and convincing evidence that Mr. Hinton be detained.  They are:  1) the nature and circumstances of the offense charged; 2) the weight of the evidence; 3) the history and characteristics of the person charged; and 4) the nature and seriousness of the danger posed by the person to any person in the community if he is released.  18 U.S.C. 3142 (g).  Weighing all of these factors, this Court should release Mr. Hinton.

1.  Nature and Circumstances of the Offense Charged

The nature and circumstances of the offense charged weigh in favor of release.  Mr. Hinton is accused of possessing a car that constituted a destructive device.

The government argues that Mr. Hinton possessed a car with the intent of setting fire to it "to protest the recent presiential election."  No explosives or accelerants were found in the vehicle, further undermining the claim that Mr. Hinton intended to explode the vehicle using the gasoline in the gas tank.  The government presents no evidence that Mr. Hinton actually intended to harm anyone and his statements to law enforcement disavowed any violence.

But as the Court knows, Mr. Hinton did not injure or even attempt to injure anyone or any property by burning the top of his car.  He did not hurt anyone and nothing contained in the complaint demonstrates an intent to do anything other than to protest in an attention-getting manner.  He immediately complied with the

police's orders.  He limited placement of the gasoline to the top of the car and made no effort to create  "wick" or other method designed to transport the fire to the gas tank of the car.

### 2.   The weight of the evidence

The weight of the evidence in this case favors release.  For the reasons set forth above, even if all of the facts alleged by the government are true, Mr. Hinton did not use a destructive device.  Even if the Court somehow concludes that the car was a destructive device, the government cannot prove that Mr. Hinton intended to use a destructive device and violate §5104.

### 3.   History and Characteristics of the Defendant

Mr. Hinton is a lifelong resident of the DMV area.  He is a high school graduate and has never before been in trouble.  Aside from two traffic tickets, he has had no previous contact with law enforcement.  He has strong family support in the form of a father, with whom he lives and two sisters who reside nearby.

Given that Mr. Hinton has no record whatsoever, the nature and circumstances of this offense do not support a finding of future dangerousness, by clear and convincing evidence.  *See Munchel v. United States*¸ 991 F.3d 1273, 1283 (D.C. Cir 2021). ("Therefore, to order a defendant preventatively detained, a court must identify an articulable threat posed by the defendant to an individual or the community.").  In short, the government, on this record cannot identify an articulable threat that, by clear and convincing evidence, requires detention.

Conditions, for example, a stayaway order from the District, can be fashioned to address any the threat or concerns that the Court may have.

> 4. The Nature and Seriousness of the Danger to Any Person in the Community

Mr. Hinton is not a danger to anyone in the community. While the allegations demonstrate someone who has used poor judgment in effectuating a protest, there is no indication that he poses a danger. While gasoline can be dangerous, there were no explosives or incendiary found inside the car. There was also Crisco that contains fire which demonstrates an intent opposite of which the government alleges.

Importantly, Chief Judge Boasberg has found that the government had not carried its significant burden for preventative detention in a case alleging much more serious conduct. In a case alleging arson using a Molotov cocktail, the defendant was released because his record contained mostly misdemeanor convictions. *United States v. Ashton Nesmith*, 20-cr-156. In that case, the defendant lit a Molotov cocktail and threw it at an occupied, unmarked police car. The cocktail bounced off the car and resulted in a small fire on the ground. Chief Judge Boasberg reversed the Magistrate Court's decision to detain the defendant, finding that he could not conclude that there were no conditions that could reasonably assure the safety of the community.

To the extent the Court is concerned with his dangerousness, restrictive conditions such as location monitoring or a third party custodian would reasonably assure the safety of the community.  Pretrial Services Agency has deemed his father qualified to be a third party custodian.

The government cannot prove Mr. Hinton to be dangerous, especially by clear and convincing evidence, with the conditions available to the Court.  The Court must release him.

## Conclusion

For these reasons, Mr. Hinton respectfully opposes the government's Motion for Pretrial Detention and requests his immediate release.


Respectfully Submitted,

A.  J. KRAMER

Federal Public Defender for the
District of Columbia

by:_____s/_____
Eugene Ohm
Assistant Federal Public Defenders
625 Indiana Avenue, NW
Washington D.C. 20004
202 208-7500