## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Case No. 25-MJ-003 (MAU)** |
| **v.** | |
| **ADRIAN HINTON,** | |
| **Defendant.** | |

### GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its motion that Defendant Adrian Hinton be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(E) (felony involving a dangerous weapon of the federal bail statute. On January 8, 2025, while President Carter was lying in state at the U.S. Capitol and while many current and former elected officials were visiting to pay their respects, Mr. Hinton drove to the U.S. Capitol and while using a flammable object lit the top of his car on fire using a homemade mixture of gasoline and Crisco oil - which he believed to be a homemade napalm explosive mixture. He did so without any concern for the damage an explosive would cause or the potential threat to human life of death or mass destruction. Considering the factors specified under 18 U.S.C. § 3142(g), there are no conditions or combination of conditions short of detention that can ensure Mr. Hinton's appearance or the safety of our community. For the following reasons, the Court should order Mr. Hinton detained pending trial.

### BACKGROUND

On January 8, 2025, at around 5:00 p.m. the U.S. Capitol Police ("USCP") began investigating an incident involving a vehicle fire Unit block of First Street Northwest Washington,

D.C. This location is on the U.S. Capitol Grounds. A map depicting the location of the vehicle fire and the U.S. Capitol is depicted below. This incident occurred while President Carter was laying in state at the Capitol Rotunda and while numerous elected officials visited the Capitol Rotunda.

Around 5:10 p.m., USCP Officer Andwi Nepomuceno and USCP Officer Nicholas O'Neill responded to the area after being approached by an individual who indicated that he saw a man attempting to light his vehicle on fire near the Grant Memorial. The officers approached the area observed an individual later identified as Mr. Hinton standing next to his car with the light of a small flame coming from his hands. Officer Nepomuceno activated his body worn camera, began running towards Mr. Hinton, and ordered him to stop and step away from the vehicle. Mr. Hinton looked at Officer Nepomuceno raised his hands above his head, stepped away from Officer Nepomuceno, turned away from his vehicle, and knelt on the sidewalk now facing the reflecting pool. Officers radioed for additional units and explained the situation. As Officer Nepomuceno approached Mr. Hinton, he dropped a small item from his hand into the snow. Officer Nepomuceno noticed light was reflecting off of his vehicle in a peculiar and uneven manor. Laid out on the ground near the vehicle was a plastic bag and multiple containers. Officer Nepomuceno handcuffed Mr. Hinton and brought him to his feet. Officer O'Neill asked Mr. Hinton if he had anything dangerous in the vehicle and he stated that he did not and that the only dangerous materials he had was the chemical mixture he had spread over his vehicle. Mr. Hinton stated that the mixture contained gasoline and Crisco.



*Figure A, Map Showing U.S. Capitol and the Location of the Vehicle Fire in Yellow Circle.*

A review of U.S. Capitol video surveillance security footage revealed that around 5 p.m., prior to the fire, Mr. Hinton removed a bottle containing an unknown liquid from his car. He then poured the liquid on the top of the vehicle. Mr. Hinton then utilized a match, placed it near the liquid on the vehicle, and ignited the vehicle on fire. The vehicle caught on fire. The USCP Command Center was able to identify the person who lit the fire in the video as the same person who was present when USCP officers arrived based on the similarity of clothing and observation of the person prior and during arrest.



*Figure B, Hinton and Vehicle on Fire.*

Mr. Hinton was taken into custody by the USCP immediately after the fire at approximately 5:20 p.m. As he was being taken into custody, he apologized for inconveniencing the USCP and clarified that he was not attempting to self-immolate but only set his vehicle ablaze to protest the recent presidential election. The fire department responded and was able to safely extinguish the fire on the vehicle. In response to the event, and the proximity of elected officials in the United States Government, a variety of law enforcement agencies responded, including the U.S. Secret Service, the Federal Bureau of Investigation, the Bureau of Alcohol, Tobacco, and Firearms, and

a multitude of D.C. law enforcement agencies. A large cordon was established in the event the vehicle contained any improvised explosives devices. Bomb technicians were called to the scene and rendered the scene safe. Law enforcement and technicians conducted a search and found no explosives or accelerants in the vehicle. The vehicle was impounded and removed from scene and placed in a secure area. Mr. Hinton was arrested and later interviewed by law enforcement. After waiving his Miranda rights and agreeing to speak with law enforcement, he told agents throughout the prior month he had developed a plan to light his vehicle on fire near the U.S. Capitol to draw attention to his displeasure with the recent election results.

Mr. Hinson had his initial appearance on January 10, 2025, and the government orally moved for detention pending trial and now supplements it oral motion.

## ARGUMENT

Mr. Hinton is eligible for pre-trial detention pursuant to 18 U.S.C. §§ 3142(f)(1)(E) (felony involving a dangerous weapon of the federal bail statute. Specifically, 18 U.S.C. § 3142(f)(1)(E) makes detention eligible "any felony that is not otherwise a crime of violence that involves . . . the possession or use of a firearm or destructive device (as those terms are defined in section 921), or any other dangerous weapon." A dangerous weapon is an "object that is either inherently dangerous or is used in a way that is likely to endanger life or inflict great bodily harm." *United States v. Chansley*, 2021 WL 861079, at *7 (D.D.C. Mar. 8, 2021) (Lamberth, J.) (collecting cases). When Mr. Hinton covered his vehicle with a homemade mixture of gasoline and Crisco oil - which he believed to be a homemade napalm explosive mixture (bomb) that was likely to endanger life or inflict great bodily harm to numerous persons in the area.

Under the Bail Reform Act, if the Court determines that "no condition or combination of

conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019).

In determining whether any condition or combinations of conditions will assure the appearance of a defendant or safety of the community, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g).

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986). *See also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues. *See Smith*, 79 F.3d at 1210, *see Williams*, 798 F. Supp. at 36.

A review of the 3142(g) factors makes clear that no condition or combinations of conditions will assure the safety of the community were he to be released.

6

I.      **The Nature and Circumstances of this Offense Merits Detention.**

The first factor to be considered, the nature and circumstances of the offenses charged, weighs in favor of detention.

As an initial matter, the crime for which Mr. Hinton has been charged is very serious. Mr. Hinton carefully researched and planned how to create an explosive substance for a possible maximum casualty event and harm to others. He then went to the U.S. Capitol grounds on January 8, 2025, while former President Carter was lying in state at the Capitol Rotunda, shortly after the certification of the 2024 Presidential election and before the inauguration on the Capitol Grounds on January 20, 2025. When Mr. Hinton arrived at the U.S. Capitol, law enforcement was already at an elevated alert level. At the time, members of the public and elected officials were visiting the Capitol Rotunda to pay their respects to former President Carter. Mr. Hinton set fire to his vehicle on the Capitol grounds without concern for the damage it could do to the U.S. Capitol or the extreme threat to human life his actions posed. An architect of the U.S. Capitol and members of the public were nearby, and saw Mr. Hinton and sought law enforcement assistance.

Simply stated, and against the defendant's intentions, it is fortuitous that no members of the public or law enforcement were injured when Mr. Hinton lit his explosive covered vehicle on fire. The nature and circumstances of this offense weighs heavily in favor of detention.

II.     **The Weight of the Evidence Against the Defendant is Formidable.**

The second factor to be considered, the weight of the evidence, also weighs in favor of detention.[1] The Government's case against Mr. Hinton is very strong – indeed compelling.

---

[1] While some judges in this Court have indicated that this factor should be given less weight, in *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, Judge Howell found that "the weight of the evidence should not

This is not a case that relies on a law enforcement identification or the possibly fleeting memory of a witness. Rather, Mr. Hinton admitted to his actions upon arrest and in a custodial interview on January 8, 2025. Mr. Hinton was arrested and interviewed by law enforcement. He told agents throughout the prior month he had developed a plan to light his vehicle on fire near the U.S. Capitol to draw attention to his displeasure with the recent election results. Mr. Hinton stated that he had watched YouTube videos that demonstrated how to mix gasoline and Crisco to make napalm. He also stated that he wanted to make the public aware of his belief that certain elected and nonelected officials are threats to U.S. National Security. Mr. Hinton acknowledged that he knew he would be arrested for his actions. He disclaimed an intent to harm anyone, he expressed that his intent was to draw attention political issues.

"[I]f the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 WL 1778194, at *10. This is such a case. Simply put, Mr. Hinton, in his own words, provided evidence of his actions and intent to choose the place and time for the great harm to others and possible destruction to the U.S Capitol and surrounding area.

---

automatically be weighed less than the remaining statutory pretrial detention factors." 2023 WL 1778194, at *8.  Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* at *10.  In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

### III.    The Defendant's History and Characteristics Merit Detention.

The third factor, the history and characteristics of the person, similarly weighs in favor of detention. As demonstrated by his actions, Mr. Hinton has strong animus toward the government. He told officers how he meticulously researched, planned, and acquired the ingredients to make a homemade explosive. Then, he brought those items to the U.S. Capitol, and set his car on fire – with an intent for the vehicle to explode on the U.S. Capitol grounds. He was able to commit the charged offenses on Capitol Hill, a place with overwhelming security, an indication that no place is safe from the defendant. Mr. Hinton has four prior arrests, and two prior convictions for driving related offenses in Virginia. While, Mr. Hinton's limited criminal history is notable, the instant alleged conduct represents an escalation to very violent and destructive conduct. According to the Pretrial Services Agency report, the defendant is also jobless. The defendant should not be released because he poses a severe danger to the community if released. Accordingly, Mr. Hinton presents a very clear and present danger to our community and should be detained pending trial.

### VI.    The Defendant Created a Dangerous Weapon by Covering His Vehicle with Gasoline and Cisco Oil – Creating a Homemade Napalm Mixture and Lighting it on Fire.

At the defendant's arraignment, counsel for the defendant made certain arguments, *inter alia*, that the defendant actions did not create a dangerous weapon. This argument is fundamentally flawed at its core and is without merit.

Simply put, the defendant's actions of lighting gasoline and Cisco oil on his vehicle establishes that the defendant made a very crude device designed to explode and that the defendant's actions could have caused death or serious bodily injury to multiple people — anyone in close proximity of his vehicle. More broadly, based on that evidence, the Court can reasonably

conclude that the defendant created a dangerous weapon - similar to an explosive bomb; and that the defendant intended and had the intent to unlawfully harm other persons or property, and that he understood the nature of his actions, or knew that he had created a dangerous weapon capable of causing serious bodily injury and/or significant property damage.

## CONCLUSION

For all the foregoing reasons, the Government respectfully requests that the Court detain Mr. Hinton pending trial on these charges.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: */s/ Emory V. Cole*
EMORY V. COLE
Assistant United States Attorney
PA. Bar Number 49136
Rachel Craft
Special Assistant United States Attorney
NY Bar Number: 5613708
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7692
Emory.Cole@usdoj.gov